Everyone is present, so we don't need to have a call of the calendar. Judge Cabranes is participating in the decision of the appeals heard today, but is unable to participate in the argument, and he will review the tapes of the argument following which we will confer on the decisions of the case. All right, we'll proceed with the first case. Good afternoon, Your Honors. May it please the Court, my name is Jeff Lindequist, and I'm here on behalf of the plaintiff's appellants and the three consolidated cases to ask that Your Honors reverse the— to be answered by Allstate, is that correct? Yes, Your Honor. I represented all three of the plaintiff's appellants below, and I represent them here today. Okay. And I'm here to ask that Your Honors reverse the judgment of the district court and remand the matter for further proceedings. This is one of hundreds of cases involving what may be thousands of homeowners in northeastern Connecticut that have found themselves in the untenable position of having homes that were constructed with defective concrete. I don't want to use up your time, so if you could just very quickly fill me in. The concrete was all manufactured by this—or supplied by this one company, JJ Mori, or whatever it was. Yes, Modish, Your Honor. Modish, Your Honor. And, yes, as far as we've been able to determine, it's a single supplier. Still in business? They have voluntarily, to my understanding, ceased operations. That's a good idea. Well, I certainly agree, Your Honor. Under an agreement with the State of Connecticut, I don't know that it was necessarily—just as a tangent, I don't know that it was necessarily the supplier who was solely at fault. I think it was more the—obviously, they are at fault, I believe, because they own the quarry,  but both have agreed to cease batching concrete for residential use and continue to agree every year as the matter comes up. But there are no suits against that company? No, Your Honor. They presumably had insurance. Yes, it was a claims-made policy that I believe was canceled or I believe suit may have been brought to void coverage on various grounds. And the entity itself is judgment-proof and partially protected by bankruptcy filing. And so the plaintiffs' appellants have done what most of the homeowners in their situation have done and looked to their homeowners' insurance carrier for coverage under the policy. Now, this— As I see it, you have several substantial obstacles to overcome. One is that the policies require, they say, we will cover the entire collapse of a covered building structure or alternatively the entire collapse of part of a covered building structure. That's one problem that you have. A second problem is that the policies provide that collapse must be a sudden— the sudden problem seems to be a problem. And the third is that the policy states collapse does not include settling, cracking, shrinking, bulging, or expansion. So you want to tell us how you overcome those obstacles? So the first obstacle that I'd like to address is the collapse does not include settling, bulging, cracking, et cetera, because I believe that's the easiest to deal with. The all-state policy is more typical than the one that was dealt with by this Honorable Kort and Kim in that it has an additional coverage or here an additional protection for collapse. Almost every insurance policy, which does not define the term collapse, as the all-state policy does not. It does not define the term collapse explicitly. Almost every policy of that type also contains language suggesting that collapse does not include settling, bulging, and expansion. And universally, the courts that have addressed that language have found that there remains an ambiguity in the term collapse that is not wholly resolved by that—that collapse is not for purposes of the analysis that was undertaken by the Connecticut Supreme Court in Beach. And the courts, beginning with Judge Hall and Basowitz, said collapse is, as default rule, if not defined, a substantial impairment to structural integrity. And, of course, you can't have any sort of collapse without some manner of cracking or bulging or deformation. So there still remains a gray area in between a complete falling down and something that impairs the structure. And the courts that have looked at that language have universally found that all that that language does is disclaim coverage for de minimis or simple cracking. Concrete is the perfect example of a material that is expected to crack. Concrete will, in almost every instance, shrink as it cures and crack. Now, that crack may be an impairment of the structural integrity, but it's normal and expected, and absent aggravating forces will never threaten the structure of the home. That's the type of mere cracking that would be excluded under that collapse is not section. But cracking that does impair... Why doesn't that provision fit well with the proposition that it has to be the entire collapse of a building structure or part thereof, meaning essentially if you've got cracking that may well or will eventually lead to the entire collapse, but at present it's only cracking, bulging, and so forth, hasn't yet resulted in the entire collapse of the building structure, we don't at this point cover that.  Well, Your Honor, I think that under Connecticut state law, I think that that approach is coming at it from the backward angle. So in Connecticut, the onus, the collapse is by default the substantial impairment of structural integrity. It has been since 1987, and the reason that the Connecticut Supreme Court made that default rule was in part because it is economically wasteful and an unsound policy to allow houses to collapse. Was that from Beach? Yes, Your Honor. But in Beach, there was no definition of collapse. In Beach, it was just the word collapse nakedly. Not precisely, Your Honor. In Beach, kind of in the concrete decay community, the collapse is not as kind of referred to jokingly as reverse Beach. In Beach, it said, the policy said, we do not cover settling, cracking, shrinking, bulging, et cetera, unless a collapse ensues. And so there, the Connecticut Supreme Court was essentially drawing the line between cracking, settling, bulging, that is not a collapse, and cracking, settling, bulging, deformation that is a collapse. And the line that they drew was, unless you clearly state what is not a collapse, a falling down, the home has to fall down, the home has to cave in, unless you explicitly lay out the structural conditions for a collapse, that line between simple cracking and structural cracking is substantial impairment. But this case has the extra, it poses to you the extra burden because the collapse is supposed to be sudden. And so the collapses need to be sudden. So for any of these clients you represent, describe for me what you think was the sudden collapse. Well, I'll borrow from the reasoning of Judge Edgington in the district court that departed from these cases and the others involving Allstate to find that the sudden is not in and of itself enough to overcome that Beach default definition. Basically, the sudden event is the fact that these cracks manifest at some point. They are noticed. But it doesn't say sudden bulging. It says sudden collapse. And that's exactly the case. So with respect, for example, to the Valls family house, what is it that you would point to as a sudden collapse? Well, the sudden, and this was the reasoning of Mackey, where Judge Edgington said, listen, we don't cover sudden. The policy doesn't say that the house has to fall down. The loss does not have to be a falling down as found by the court below in these cases. The collapse is the substantial impairment to structural integrity. And so the sudden bears no weight under your analysis? Well, at some point the house is going to go, either in whole or in part, from being impaired to substantially impaired. And that may occur at a sudden point. That may be noticed at a sudden point. But where you're still dealing with this default definition of collapse as requiring something less than a falling down, the sudden component may be supplied by other factors such as manifestation or the sudden events, in my opinion. The concrete, there's an internal pressure that's building. And the cracking occurs when that pressure exceeds the strength of the concrete at that point. Each of those breaks, each of those fractures occurs at a point in time. And nowhere in the policy does it define collapse as falling down. And here the court below in these three consolidated cases did find that sudden and entire unambiguously precluded coverage for a home that was still standing. But that is not a universal construction or opinion of these policies. So remind me, in each of the three cases that's represented here, the building was remediated, the home was remediated? Actually, I believe in only one of these cases was the home remediated, the Carlson case. The other two are still deteriorating, decaying. But I think that there's a great significance to the fact that Judge Edgerton departed from his colleagues. If the construction of an insurance policy, the ambiguity or non-ambiguity is based on whether there's more than one reasonable construction, and courts opposing constructions are somewhat inherently reasonable, here there are two reasonable constructions of this insurance form. And just so I'm absolutely clear about the rule of decision you're urging on us, you would define a sudden collapse how? Well, I define collapse, as the Connecticut Supreme Court does, as a substantial impairment to structural integrity. That substantial impairment to structural integrity has to affect the entire structure or an entire part of the structure, such as the concrete basement walls. And it either has to be unexpected or, as construed by Judge Edgerton, it has to go from being unnoticed to noticed or manifesting at a definite point in time. And you think that language by Judge Edgerton is a satisfactory definition of sudden? Yes, Your Honor. So I will yield and return in rebuttal. Thank you, Your Honors. May it please the Court. My name is Rick Fenton, and I represent all State in the three cases before you. Sympathetic as plaintiff's plight may be, the trial court should be affirmed because plaintiffs, as a matter of law, simply have not demonstrated the facts necessary to trigger coverage under their homeowners' policies, specifically a sudden and accidental entire collapse of all or a portion of the premises. The words of the policy must be given meaning and effect. Let's say one of these homes is built with defective concrete, and over the years three of the walls fall down and the fourth remains standing. Is that the entire collapse of part of a covered building structure? I haven't looked at that question, Your Honor. Oh, I'm asking. My impression, without looking at it further, is that that would be a collapse of a portion of the building, a single wall falling in, I would think would be a part of the structure. And that would be covered or not? I think it probably would, but that's not the situation we have here. Would be covered? I believe it would. Okay, suppose, for example, you had a sump hole that opened up on the property, and week by week the building, the home, tilted toward the sump hole, and one day it just disappeared underground. Covered by your policy? I don't believe so, Your Honor, and I'll tell you why. There is an exclusion in the policy dealing with neglect, and as was pointed out in the Kelly case, which is a case that plaintiffs rely on, if the defect is discovered in time to remedy the defect, it's the homeowner's responsibility to remedy that defect. That's why you have the sudden and accidental restriction in the collapse coverage. So I think, in Your Honor's most recent hypothetical, I don't believe it would be covered. Okay. Earthquake? If there's no earthquake exclusion in the policy, Your Honor, I think it would be covered if it resulted in an entire collapse of all or a part of the structure. Same thing with lightning. Same thing with the insect infestation that Judge Underhill referenced below in the Alexander case. So I think the bottom line is each case has to be judged on its own facts and circumstances, and what we have here are buildings that are still standing. The plaintiff's own experts in the Carlson case and the Lee's case testified that the buildings were standing. They were fit for occupancy as a residence. They continue to be occupied. They pose no safety risk at the present time. They have not fallen down. The same thing is true in the allegations of the complaint in the Valls case, which was decided on a motion to dismiss as opposed to summary judgment. And in that situation, Your Honor, I don't know how one can say, consistent with the language of the policy, that a building that is still standing in all respects and occupied in all respects has suffered an entire collapse. I don't know how one can say that this gradual deterioration, which can be remedied by the homeowner. This is not a maintenance contract. As far as that argument, if collapse means what your adversary said it means, taking that definition from Beach, then if the entire building or a substantial part thereof is not structurally integral and sound, then there is a collapse of the entire or a significant part of the structure. But that doesn't deal with the sudden problem. It doesn't deal with the suddenness, Your Honor, nor does it deal with the entire collapse. You know, Beach, I think you have to look at the facts of Beach. I know it has the holding that unless otherwise defined, a collapse can be a substantial impairment of structural integrity. Well, it is otherwise defined in this policy. But in terms of what the Court meant by a substantial impairment of structural integrity, on the facts of Beach, that home was literally falling apart. And a wall, in fact, had caved in. So I think that has to be read also in the context of the facts of Beach. But, of course, here you have the additional requirement of suddenness. You have the additional requirement that it has to be an entire collapse, and that simply hasn't happened in any of these cases. And I don't know how one can enforce the plain language of this policy and sustain the plaintiff's claim here. Out of curiosity, all state is incorporated in the first place in business. Where? Illinois, Your Honor. I believe it's a Delaware corporation, but the principal place of business is Illinois. There must be Connecticut. Connecticut being a kind of home place of insurance, there must be Connecticut insurers who have insured some of these homes. Is that not so? I believe there are, Your Honor. How is it that all the decisions are coming out of federal court rather than New Jersey state courts? Well, there are a number of New Jersey state court decisions as well, Your Honor, and some of those are cited in our briefs. There's – I think most of the out-of-state carriers have removed the cases to federal court, which is why you're seeing a lot of the cases come out of the District of Connecticut. There is also a class action pending in the District of Connecticut. Your Honor, let me talk for a minute about the Maki case, which – Which case? Maki. That's Judge Edgington's decision that counsel referred to. And that decision really goes against the vast majority of decisions that have come out of the district court and the Connecticut state courts on this issue. I think Maki was wrongly decided. For starters, it is directly contrary to the Connecticut Supreme Court's decision in Buell with respect to the suddenness requirement. Second, like the Florida District Court's decision in Kelly, I think Judge Edgington conflated the requirement of suddenness of the collapse, which I believe you had referred to, Judge Parker, with the gradual deterioration of the foundation. The suddenness refers to the collapse, the event that would trigger coverage. It can be a gradual process that leads up to a sudden collapse, if you have rotting wood in the home. That's the way the policy reads. That's exactly the way the policy reads, Your Honor. So I think Judge Edgington, with all due respect, missed the mark on that one. But, you know, when you step back from all of the microanalytic word games, and I mean no disrespect by that, that is what's happening, I simply don't know how one can have an entire collapse when you have a building that's still standing, still fit for occupancy and that poses no imminent risk to safety. And I guess that, in a nutshell, is our position. Well, you know, I've spent a lot of time reading this policy, and I've got to tell you I can't remember the last time I read something that was as confusing as this Allstate policy. So let's say that for a cause that's actually covered, like the defective building material, the building is starting to tilt. Every week it tilts 5%. No coverage until something falls down. Right? Well, there may not be coverage then, Your Honor. And, again, I come back to the neglect exclusion. Mr. Christensen, can you hand me the policy? Thank you. All right. I'm looking at the Allstate policy on page 7, and there's an exclusion number 7, which says loss is excluded if neglect by an insured person to take all reasonable steps to save and preserve the property at and after a loss or when the property is endangered by a cause of loss we cover. So when you have a situation, as recognized in Kelly, where the property is slowly deteriorating and the homeowner can do something about it, it's the responsibility of the homeowner to maintain the property. This is not a maintenance cover. Are you saying that the homeowner – are you saying that in that circumstance, the homeowner should have gotten initially – should have gotten additional insurance because the kind of remediation you're talking about could be very, very expensive? So you're saying that the homeowner should have gotten an additional policy that would cover the kind of situation that you're talking about, which is a gradual progress towards total collapse, which the obligation to take care of it places on the homeowner until the collapse occurs, so that your policy covers for the boom, fall in. But if he wanted protection – if the homeowner wanted protection against something gradual that was going to eventually lead to the collapse, should have gotten additional coverage. That's correct, Your Honor, and the homeowner's insurance is intended to protect the homeowner against the sudden catastrophic kind of loss. When Your Honor began with counsel's argument asking about the J.J. Mattis company, I thought those questions were very pertinent because, of course, the normal recourse that a homeowner would have would be against the supplier, against the builder, on a breach of warranty claim. I know that some new construction comes with certain kinds of extended warranties. That's normally the recourse that the homeowner would have. All state does not insure the solvency of the builder or the supplier. All state does not insure against their bankruptcy or against the passage of time for statute of limitations. But that's really where the recourse lies, not on the homeowner's policy. So I have a homeowner's policy, and let's say because of the vermin infestation or the defective concrete, my building, my home starts to tilt, and a month later it collapses. Are we covered? A month, I can't tell you that a month is sudden if it was in time to do something about it. It may or may not be sudden. I think you'd need some experts. So in other words, you wouldn't know whether you were – you know, my home starts to tilt. A month later, a wall falls off. It falls down. What you're telling me is that you can't tell whether you're covered. What I'm saying, Your Honor, is as in most insurance cases, it's going to be heavily dependent on the individual facts and circumstances. I gave you the facts. What's your best answer? Covered or not covered? My best answer in that case is if the homeowner could have taken reasonable steps to prevent the collapse, it is probably not covered. If the homeowner – You're relying for that on parts of the policy, other parts of the policy, that are not involved here on the obligation of the homeowner to take remediation steps. That's correct, Your Honor. My answer would be if this condition became known at a point in time when it was too late to prevent the collapse, it would probably be covered. It starts to tilt. I see it tilt. And then a month later, the wall falls off. Your Honor, I think it would be the reason – Is that a sudden collapse or not? I think that is a collapse that might be sudden if the homeowner took reasonable steps to try to find out the source of the problem and whether it could be remedied. Well, isn't there a pretty good argument that if today the wall starts to tilt, if today there's a visible tilting of the wall, that's enough today to have the coverage for collapse without having to wait for the wall to fall down? That's not an entire collapse, Your Honor. That is a leaning. Buildings can be shored up. Entire collapse means a complete, total, full collapse. That's the Agassiz case that was decided in the district court. And I don't think the mere tilting of a wall would come within the definition of a collapse, unless it was tilting to the point where, you know, 45-degree angle or something. Maybe that would fit it. But if it's a slight leaning, I don't think that's covered. So if I was living in this home and witnessed this event unfolding and called Allstate, Allstate would say, according to you, well, we don't really know whether we can cover you or whether we can front the cost for an engineer, front the cost for a contractor, go out and figure it out yourself and come back to us and we'll tell you whether you're covered. No, I think Allstate would do what it did in the cases here, and that is it would send out an adjuster, it would procure its own engineering report to determine the source of the problem, to determine the origin, to determine the extent of the damage, and then based on the facts that were gathered, make a coverage decision. That's what it did in each of the cases presented here. Yeah, but that will take more than a month. Easily, you can't do anything like that in a month. So I'm curious. I mean, supposing that one of these insureds had essentially heard this argument at the time that they were getting the insurance and they said, well, as I understand it, if my house starts to crack and starts to fall apart by a gradual process, you're going to say that I would be required to spend a ton of money to essentially rebuild the foundation from underneath the house, and you're saying that's not covered because it hasn't been a sudden entire collapse. So do you have a policy that fills the hole? Would you have offered if the homeowner says, well, I want coverage for that if my home becomes doomed to become useless and to fall into a pit? I don't want to be a policy that says, sorry, tough luck, that's your fault. We only sold you a homeowner policy, not a policy that was worth anything against that situation. What would you have had to offer that homeowner? Is there a standard policy that fills the gap you're talking about? I'm not aware that all State offers a product that would fill that gap, Your Honor. As I said, I think there are policies that one can get upon the purchase of a home that guards against these types of defects. And so under Judge LaValle's hypothesis, once the collapse occurs, then all State can turn around and say under this policy language, well, you saw it coming. So under, let's see, what are we talking about here? Bear with me just one second. Under Conditions 7 and 8 under C on page 12, once you see the tilting of the deterioration, then it's your responsibility to take some reasonable steps to prevent it. And since you didn't, no coverage. So under your analysis, these people who bought this, what's it called, this deluxe homeowner's policy are doomed if they do and doomed if they don't. Well, Your Honor, unfortunately, and there's another exclusion which says they don't cover wear, tear, aging, deterioration. And they, by the way, also don't cover earthquakes. Defects. If the sump hole opened next to your home and your building slid into it, you're out of luck under this deluxe homeowner's policy, right? Depending on the circumstances, again, Your Honor. Everything depends on the circumstances, Counsel. Under Condition 5 on page 12, when your home goes into the sump hole, you're out of luck. And there is, I know there is earthquake coverage that is available in certain circumstances, whether it would be available here. No, you've got an earthquake exclusion under this policy we're litigating today. Yes, under these policies there isn't. That's saying Condition 5. But I was responding to the question that Judge LaValle asked, is whether earthquake coverage is available. I believe it is in certain circumstances and in certain locations. But, Your Honor, the fundamental issue here, I think, is that homeowner's insurance is not 100 percent protection against any calamity that can befall a homeowner. Of course not. It's meant to deal. That's quite obvious. And it's meant to deal with the sudden catastrophic loss that is really unpreventable. And sad to say, under the current circumstance, it is quite expensive for the homeowner to replace the concrete, but that's really not the test under this policy. If it were a quick fix, something that cost a few thousand dollars. All State would cover it. No, I was going to say, Your Honor, if it didn't lead to a sudden collapse and it was a defect that could be easily remedied, I don't think anyone would have any thought about the homeowner having to maintain their own property. I think the only thing that differs here is that the magnitude of the problem, you know, has a very real human impact, but I don't think that changes the terms of the policy. All right. We'll hear a rebuttal. Thank you. Good afternoon again, Your Honors. To begin with the neglect exclusion that was discussed at length, I don't believe that was raised below. I don't believe that was even raised in the brief, because if it was, I would have pointed out that we're dealing here with an additional protection, that is a restoration of coverage normally excluded under those base policy exclusions. And there is law in this particular type of damage that recognizes that unless, and it's the Saroy versus USAA case that I'm referring to. I'm happy to provide a site. It didn't make my brief because it wasn't raised by the appellees, but they recognize that those types of base exclusions are not enforceable against the additional protections. Those are coverages above and beyond the generic all-risk policy that are afforded under the all-risk provisions. Sorry, you've lost me. Can you explain that again? So you have an all-risk policy that covers all risks unless they are explicitly excluded. You have a list of exclusions. And then many companies, like Allstate, offer additional coverage above and beyond that all-risk coverage. Those are found in the additional protections, or in many policies, they're styled additional coverages. So I don't think there's any preclusion for a collapse that you see the damage, you see it go from impairment to substantial impairment, and you don't have to prevent it. But even if you did, I would suggest to your honors that there's no way to prevent this loss. There's nothing reasonable or unreasonable that a homeowner can do to save these walls. They will deteriorate and they will decay until they fall down. It just so happens that the Connecticut Supreme Court doesn't require that they fall down unless an insurer explicitly lays out the structural conditions that they want to cover as a collapse. Counsel brought up the Alexander case. Now, there's an insurance company that took a shot at defining collapse. Allstate did not. Alexander says we cover collapse of a building or part of a building. A collapse is a falling down or caving in. Mr. Fitton bounds us with the concept that under the policy, the collapse has to be sudden. Before your time runs out, I understand your position on collapse, but I want to be entirely sure that you have an opportunity to be elusive on your views on sudden. Well, I think that Judge Edgington offers the best construction of the term sudden in the context of this damage, and that's where he says, listen, this decay has been ongoing, but at some point it manifests in visible cracks, and by then it's too late. And so it's sudden because when the substantial impairment manifests, it's already past the point of no return. But the appearance of a six-inch crack can't be, just in common parlance doesn't evidence a sudden collapse. Well, but it may be a sudden substantial impairment to the structural integrity of that home. The house hasn't fallen down, but it's impaired, and it's substantially impaired. I'm not getting it. If you have a crack that starts out as a hundredth of a centimeter, and little by little it expands, and over a period of six months it goes from a hundredth of a centimeter to six inches, how do you comply with the sudden? How do you comply with the sudden? Well, perhaps when it's a hairline crack, this is not normal cracking, it's not expected cracking, but even at a hairline width it may not affect the structure. But as the cracks widen, they go up, they now move the home. They start to affect the walls upstairs, drywall cracks, doors don't work properly. Where's the sudden? When it starts to affect the structure, and that's when it's typically discovered by the homeowner. What's the collapse? What was that? That's the collapse. I'm not sure that's the sudden collapse. Well, it all depends on the definition of collapse. Sudden is not used in connection with the word. It doesn't define collapse. Collapse must be a sudden and accidental direct physical loss. Where's the sudden physical loss? Well, the physical loss is the cracking. The suddenness of the physical loss. Where's the suddenness of the physical loss? Well, we are dealing with a definition of collapse that is substantial impairment. I suggest that there's a point when, in the progressive decay of this home, it went from being merely impaired to being substantially impaired. That's when the structure meets the collapse, and that's when the collapse loss occurs. And I think there's a point in time where that occurred. Thank you, Your Honors. Thank you, Counselor. Just out of curiosity, if we were to contemplate certifying these questions to the Supreme Court of Connecticut, would your parties agree to our doing that? You might not want to answer that off the top of your heads. You might want to consult with your. But it's already certified, isn't it? The issue of. What did Judge Underhill certify? Judge Underhill certified, under the liberty and mutual form of policy, what does substantial impairment to structural integrity mean. The Supreme Court took that in a companion case and expanded. And has heard argument. Yes, Your Honor, on December 18th. They're actually, to be quite frank, they expanded that certified review. They took two additional questions, one being is substantial impairment to structural integrity the standard where the policy says collapse does not include settling, bulging, shrinking, or expansion? And another question that doesn't relate to this policy, because there's no specific exclusion for foundations under the additional coverage. If I understand correctly, the Connecticut Supreme Court does not have before it the issues that we're dealing with about whether what we have here complies with the sudden, the need for sudden physical loss. Yes, Your Honor. That would be what would be left to be certified. Or the entire, it doesn't have the definitions that would answer this case. That's right. The entire and sudden and accidental are not before them. And I would consult with my clients, but my indication would be that we would have no objection to certification. All right. May I address the certification? What's that? May I address the certification? Yes, yes. Your Honor, obviously, it's in the discretion of the Court, but we do not believe that these cases present any unusual or novel questions of Connecticut law that would justify certification. They all present straightforward questions of contract interpretation, and the Connecticut Supreme Court has already given ample guidance in Lexington, in Buell on the suddenness requirement, and, frankly, in Beach on the further definition of the term collapse. So we don't believe that this case presents any questions that would be appropriate. Would you oppose certification? We would oppose certification, yes, Your Honor. Thank you both. Thank you.